*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0045**

State of Minnesota,
Respondent,

vs.

Tracee Chung,
Appellant.

**Filed December 5, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-14-20782

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Stephen V. Grigsby, Minneapolis, Minnesota (for appellant)

Considered and decided by Smith, Tracy M., Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**RODENBERG**, Judge

Appellant Tracee Chung challenges her conviction for aiding and abetting the sale of 50 kilograms or more of marijuana. We affirm.

**FACTS**

Appellant met Sleum Prodfuang in 2011. Later that year, appellant helped Prodfuang traffic 11 pounds of marijuana through the mail from Arizona to Minnesota. Appellant and Prodfuang were arrested, and both pleaded guilty to fifth-degree-controlled-substance crimes.

In May 2013, appellant and Prodfuang rented a house together. After they moved in, a neighbor began to suspect that someone was dealing drugs out of appellant's residence. The neighbor became suspicious when he saw people loading large bags into a car on three or four occasions, and many short-term visitors coming and going. On June 19, 2014, the neighbor saw what he thought was a drug deal between Prodfuang and a visitor. The neighbor immediately reported this to the police. The visitor and Prodfuang then left appellant's house in separate cars, and police stopped both cars. Police found a large amount of marijuana in the visitor's car. Based on that, they arrested the visitor and Prodfuang, and obtained a warrant to search appellant's house. Police kept the home under surveillance while they sought the warrant, and they executed the warrant the following day.

During the search of the home, police discovered approximately 235 pounds of marijuana, along with plastic bags and scales. Most of the marijuana was found in appellant's garage and basement. Police also found a digital scale and about $6,000 in cash in appellant's bedroom, and receipts showing nearly $100,000 of cash deposits into multiple bank accounts among appellant's personal papers.

Police also recovered Prodfuang's phone and appellant's phone. Searches of the phones showed text messages between Prodfuang and a person identified as "Wini." The text messages showed that Prodfuang planned to fly to Utah on June 15, 2014, and then meet up with Wini in the southwestern United States. From June 17 to 19, 2014, Prodfuang received text messages from Wini concerning the progress of Wini's travel to Minnesota. A search of appellant's phone showed that she made a 42-second phone call to Wini during the time that Wini was driving to Minnesota. During the search of appellant's house, police found a van in her garage that had been rented in California and was set to be returned in St. Paul on June 20. The van contained bags of marijuana, suggesting to police that Wini had used it to transport marijuana to appellant's house.

Finally, during the search of appellant's phone, police found text messages between appellant and Prodfuang on the day Prodfuang was arrested, in which appellant requested $500,000 from Prodfuang as reimbursement for the work she had done for him. Text messages also showed that appellant asked Prodfuang to buy her a Lexus, and Prodfuang indicated to appellant that he was actively looking to purchase a used Lexus for her.

The state charged appellant with two counts: conspiracy to sell 50 kilograms or more of marijuana and "the sale of, and aiding and abetting the sale of, 50 kilograms or more of marijuana." Before trial, appellant sought to discover, by way of a subpoena duces tecum, documents related to an involved police officer's unrelated investigations, with the purpose of impeaching the officer at trial. The district court prohibited it. Appellant also challenged the admissibility of evidence of the incidents leading up to her

2011 conviction. The district court admitted the evidence as both immediate-episode evidence and under rule 404(b). The jury found appellant not guilty of the conspiracy charge, but guilty of aiding and abetting the sale of marijuana. After the jury delivered its verdict, the court remanded appellant to custody. Appellant was later sentenced to 58 months in prison, with credit for jail time served.

This appeal followed.

## D E C I S I O N

Appellant argues on appeal that (1) the evidence was insufficient to convict her of aiding and abetting the sale of marijuana, (2) the court erred by not giving the jury a requested unanimity instruction, (3) the court erred in admitting evidence of her past bad acts, (4) the court erred in quashing her subpoena duces tecum for documents related to an investigating officer, and (5) the court erred by denying her bail after the jury had found her guilty and before sentencing.

## I. Sufficiency of the evidence

### A. Appellant's liability as a principal concerning the sale of 50 kilograms or more of marijuana

The state argues for the first time on appeal, despite the case having been tried to the jury as an aiding-and-abetting case, that the evidence at trial was sufficient to prove appellant guilty as a principal for the sale of 50 kilograms or more of marijuana, and that we should therefore expand the scope of our review of the sufficiency of the evidence. The state did not raise this theory of liability at the district court, and we therefore do not consider it. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996). The case was tried to a

4

jury exclusively as one in which appellant was charged with conspiracy and aiding and abetting the sale of marijuana. We review the sufficiency of the evidence in that context.

### B. Aiding and abetting the sale of 50 kilograms or more of marijuana

Appellant has advanced two distinct arguments on appeal concerning whether the evidence was sufficient to convict her of aiding and abetting the sale of marijuana. In her brief, she argues that the evidence was insufficient for the jury to find that she took any specific affirmative action constituting aiding and abetting; at oral argument, appellant argued, for the first time, that the evidence was insufficient to prove that she intended to aid and abet the sale of marijuana because the jury could have drawn rational inferences from the circumstantial evidence inconsistent with her guilt. Both of appellant's sufficiency arguments fail. The evidence of appellant's aiding and abetting the sale of marijuana is overwhelming.

#### 1. Proof of an affirmative act

To convict a person of aiding and abetting a crime, the jury must find that she "intentionally" aided and abetted the principal in committing that crime. Minn. Stat. § 609.05, subd. 1 (2012). Here, we need not determine whether appellant's passive presence during the commission of a crime is a sufficient basis for aiding-and-abetting liability, because the state proved at trial that appellant took multiple affirmative actions to aid and abet Prodfuang's sale of marijuana.

Appellant argues that the jury could rationally find, based on the proved circumstances, that she was not actively involved in Prodfuang's drug business. Appellant argues that the text messages between her and Prodfuang were related to a

5

personal dispute, that she wanted payment for free work she had done for Prodfuang's mother, and that other evidence of her actions have innocent explanations. These arguments presume that the jury accepted appellant's explanation of the texts. But the jury found appellant guilty, implicitly rejecting her testimony. Moreover, the amount of marijuana being stored in, and sold out of, appellant's house is so significant as to render unreasonable any argument that she was unaware of it. Appellant was convicted in 2011 in a drug-sale operation involving Prodfuang. Appellant testified that she only made approximately $12,000 each year from her employment. The receipts and cash found in appellant's possession are wholly inconsistent with the argument that appellant did not handle and receive money used in drug sales. Finally, appellant was in contact with Wini while Wini was transporting the marijuana that was seized at appellant's home. On this record, reviewed in the light most favorable to the jury's verdict, the state proved multiple affirmative acts by appellant to aid and abet the sale of drugs.

### 2. Circumstantial evidence of guilt

At oral argument, appellant contended that our analysis of the sufficiency of the evidence must include the two-step circumstantial-evidence test. Appellant arguably forfeited this issue by failing to include it in her initial brief to this court. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn. App. 1997) ("Where a defendant asserts error, but fails to address the error in his appellate brief, the issue is deemed waived."), *review denied* (Minn. Aug. 5, 1997); *see also State v. Beaulieu*, 859 N.W.2d 275, 278 n.3 (Minn. 2015) (explaining the difference between "waiver" and "forfeiture"). However, we address appellant's argument on its merits because it fails even if it was not forfeited.

We apply heightened scrutiny when reviewing the sufficiency of circumstantial evidence using a two-step analysis. *State v. Al-Naseer*, 788 N.W.2d 469, 473-74 (Minn. 2010). First, we identify the circumstances proved, deferring to the jury's acceptance of evidence that proved those circumstances, as well as the jury's rejection of evidence that conflicted with those circumstances. *Id*. at 473. Second, we "determine whether the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt. We examine independently the reasonableness of all inferences that might be drawn from the circumstances proved; including the inferences consistent with a hypothesis other than guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotations omitted). We will sustain a conviction if "the reasonable inferences that can be drawn from the circumstances proved as a whole" are "consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015).

Considered in the light most favorable to the state, the evidence proves the following circumstances. In 2011, appellant helped Prodfuang transport marijuana into Minnesota. After they were both convicted of controlled-substance crimes, appellant and Prodfuang began living together in 2013. Sometime in 2014, appellant's neighbor began to suspect someone was selling drugs out of appellant's house because of an incident in which he saw people loading large black trash bags into a car and because of the number of short-term visitors. In early June 2014, Prodfuang arranged for a person named "Wini" to drive a large amount of marijuana from California to Minnesota. While Wini was transporting the marijuana, appellant called Wini at least once, and had Wini's phone

7

number stored in her contacts. Around the time that Wini arrived at appellant's home with the marijuana, appellant began texting Prodfuang, demanding $500,000 for all of the "business work" she had done, and asking that he buy her a Lexus. Prodfuang responded by texting that he was shopping for a Lexus for appellant. The last call Prodfuang made before he was arrested was to appellant. After appellant was arrested, police searched her home and found 235 pounds of marijuana in the home, along with scales and packaging materials. Police also found $6,000 in cash in one of appellant's jackets, and papers among appellant's personal possessions showing cash deposits totaling nearly $100,000 into multiple bank accounts.

We next consider whether the proved circumstances support a rational inference inconsistent with guilt. *See, e.g.*, *Silvernail*, 831 N.W.2d at 600 (finding no rational inference inconsistent with guilt); *c.f. State v. Sam*, 859 N.W.2d 825, 836 (Minn. App. 2015) (finding that a rational inference inconsistent with guilt existed).

We see no rational inference inconsistent with appellant's guilt. Considering the circumstances proved, all of which indicate appellant aided and abetted Prodfuang's drug business, a rational fact-finder could only conclude, as did this jury, that appellant is guilty of aiding and abetting the sale of marijuana.

## II. Unanimity instruction

Appellant argues that the district court erred by not instructing the jury that the jurors "must unanimously agree on the act that constituted the affirmative act for aiding and abetting." Appellant does not challenge the propriety of the district court having incorporated into a single instruction the definition of the crime of sale of marijuana and

8

the definition of liability for crimes of another by aiding and abetting the sale of marijuana. Rather, appellant argues that the jury was required to agree on the affirmative act forming the basis of her accomplice liability, and that, "[h]ad this instruction been properly considered, the [jury] might have concluded that no such act exists."

We review a district court's choice of jury instructions for abuse of discretion. *State v. Hannon*, 703 N.W.2d 498, 509 (Minn. 2005). An erroneous omission of a requested instruction only results in appellate relief if prejudice is demonstrated on appeal. *Id.*

"Jury verdicts in all criminal cases must be unanimous." *State v. Pendleton*, 725 N.W.2d 717, 730 (Minn. 2007). To be unanimous, "a jury must unanimously find that the government has proved each element of the offense. But the jury does not have to unanimously agree on the facts underlying an element of a crime in all cases." *Id.* at 730-31 (quotation omitted). The district court need not give a unanimity instruction where a defendant is charged for a "pattern" of past actions, or a "grouping of past acts" that constitute a crime. *Id.* at 731-32. "The rule that jurors need not agree on the mode of commission of a crime 'is not only constitutional, it is probably indispensable in a system that requires a unanimous jury verdict to convict.'" *Id.* at 733 (quoting *Schad v. Arizona*, 501 U.S. 624, 650, 111 S. Ct. 2491, 2506 (1991) (Scalia, J., concurring in part and concurring in the judgment)).

Here, the state presented overwhelming evidence that appellant was involved in a large drug-dealing operation with Prodfuang, involving interstate shipments of marijuana and a supply and distribution network in Minnesota. The state provided a wealth of

evidence proving a pattern of appellant's assistance in the drug-sale operation. Even if we were to conclude (which we do not) that the district court ought to have given a unanimity instruction, any error was harmless. The record contains overwhelming evidence of appellant's active participation in Prodfuang's criminal enterprise. Considered in the light most favorable to the verdict, the record evidences that appellant both demanded *and received* thousands of dollars for her role in the operation, and when the criminal enterprise was interrupted by police, she was asking for hundreds of thousands of dollars in additional pay for her efforts.

## III.     Admission of 2011 marijuana-dealing evidence under 404(b) exception for bad acts

The district court allowed the state to introduce evidence of appellant's acts in 2011, which led to her conviction for fifth-degree possession of a controlled substance. The district court admitted the evidence as both immediate-episode evidence and under Minn. R. Evid. 404(b). Appellant argues that the district court erred in admitting the evidence under rule 404(b) because the district court relied too heavily on the weakness of the state's case to find that the probative value of the past bad acts was not outweighed by the potential for unfair prejudice.

Evidence of a past bad act is inadmissible to prove a defendant acted in conformity with that past crime or wrong. Minn. R. Evid. 404(b). However, such evidence may be admitted to prove other things, such as a common scheme or plan or the defendant's mental state, if "the probative value of the evidence is not outweighed by its potential for unfair prejudice to the defendant." *Id*.

10

We review a district court's admission of 404(b) (*Spreigl*) evidence of other crimes for abuse of discretion. *State v. Clark*, 738 N.W.2d 316, 345 (Minn. 2007). *See State v. Spreigl*, 272 Minn. 488, 491, 139 N.W.2d 167, 169 (1965).[1] "The appellant challenging the admission of [404(b)] evidence bears the burden of showing the error and any resulting prejudice." *Id.*

When weighing the probative value of evidence against its potential for unfair prejudice, courts consider the need for the evidence as one of a number of factors properly to be used in making a decision. *State v. Ness*, 707 N.W.2d 676, 690 (Minn. 2006). While the prosecution's need was formerly an independent requirement for admission under 404(b), now the "prosecution's need for other-acts evidence should be addressed in balancing probative value against potential prejudice, not as an independent necessity requirement." *Id.* Appellant correctly asserts that the Minnesota Supreme Court's decision in *Ness* was an attempt "to move away from the undue emphasis [it] had previously placed on the strength or weakness of the state's case." *State v. Bell*, 719 N.W.2d 635, 639 (Minn. 2006). But *Ness* did not foreclose district courts from considering the prosecution's need when conducting the balancing analysis. *State v. Scruggs*, 822 N.W.2d 631, 644 (Minn. 2012) ("When examining whether the probative value of *Spreigl* evidence outweighs its potential for unfair prejudice to a defendant, we balance the relevance of the bad acts, the risk of the evidence being used as propensity

---

[1] Evidence of other crimes or bad acts evidence is commonly referred to as "*Spreigl* evidence." *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015).

evidence, and the state's need to strengthen weak or inadequate proof in the case." (quotation omitted)).

The district court here considered four factors under rule 404(b) in its decision to admit the 2011 evidence. First, it found that the probative value of the prior conviction was high because the 2011 bad acts were closely related to the charged offense. Second, the district court found that the evidence was relevant to show a relationship between appellant and Prodfuang, who appellant was charged with having aided and abetted in 2014. Third, the district court found that the state had a "strong need for the prior bad act evidence." Finally, the district court found that the potential for unfair prejudice could be reduced by providing a limiting instruction to the jury.

The district court properly considered that appellant's actions in 2011 tended to show a common scheme or plan. Appellant was acting in both instances with the same person in similar enterprises. The 2011 evidence also properly tended to prove appellant's mental state during the 2014 incident. Appellant claimed ignorance of Prodfuang's activities, but the 2011 evidence demonstrates appellant's knowledge that Prodfuang was a drug dealer. Appellant assisted Prodfuang in 2011, and her having done so demonstrates what she would have known about the hundreds of pounds of marijuana in her home in 2014. The district court also properly used its discretion to give a limiting instruction to the jury.

We conclude that admission of the 2011 bad-acts evidence was within the district court's discretion. We therefore do not separately consider whether it was also properly admissible as immediate-episode evidence.

## IV.  Denial of subpoena duces tecum

Appellant argues that the district court improperly quashed her subpoena duces tecum to examine the police reports of a detective who would be testifying at trial.  She claims that this deprived her of "a meaningful right to a compulsory process and confrontation."

"The United States Supreme Court has clearly stated that the Confrontation Clause is not a constitutionally compelled rule of pretrial discovery."  *State v. Cermak*, 442 N.W.2d 822, 825 (Minn. App. 1989) (citing *Pennsylvania v. Ritchie*, 480 U.S. 39, 52 107 S. Ct. 989, 999 (1987)).  Still, a district court may compel the state to disclose even confidential information if the defendant makes a "plausible showing that the information sought would be both material and favorable" to her defense.  *State v. Hummel*, 483 N.W.2d 68, 72 (Minn. 1992) (quotation omitted).  The district court has discretion to deny a defendant's discovery request if she fails to make this showing.  *Id.*

Here, appellant's subpoena requested that law enforcement turn over "all documents, including police reports that refer to or memorialize any experience of [the detective's] involvement in any investigation of cases involving marijuana."  Appellant argued that this information was necessary to effectively question the detective.  The state objected, arguing that the request was unnecessary because appellant had already been provided with a memorandum summarizing the detective's experience and anticipated testimony.  The state also objected because the subpoena would require police to turn over confidential information on cases unrelated to appellant's case.  The district court granted the motion to quash the subpoena, stating that the information was confidential,

and appellant had not made a plausible showing that the information was necessary to her defense because the memorandum from the prosecution provided sufficient evidence to cross-examine the detective.

The district court acted within its discretion. The prosecutor's memorandum to appellant gave appellant information about the officer's background that the prosecution would use as foundation. Appellant did not identify to the district court what further information she hoped to gain from her request. Her discovery request appears to have been motivated solely by a wish to search unrelated files for the possibility of some favorable evidence, and not based on any "plausible showing" of materiality. As a result, appellant has not shown that the district court abused its discretion. And appellant has not demonstrated any constitutional violation by the district court's exercise of its discretion. *Cermak*, 442 N.W.2d at 825.

## V. Denial of bail

Finally, appellant argues that the district court violated article 1, section 7 of the Minnesota Constitution by denying her bail and ordering her into custody after the jury delivered its verdict and before sentencing. This issue is moot, since appellant has since been convicted. *State v. LeDoux*, 770 N.W.2d 504, 515 (Minn. 2009) ("[B]ail issues are considered moot after the defendant's conviction.").

**Affirmed.**